UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Mason Johnson, | ) | C/A No. 5:12-cv-01914-JMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Report and Recommendation |
| Kathryn Bumgardner, Officer Daniels, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while detained at the York County Detention Center ("YCDC"). This matter is before the court on Defendants' Motion for Summary Judgment filed on March 18, 2013. ECF No. 62. As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1] order on March 18, 2013, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 64. Plaintiff responded to Defendants' Motion for Summary Judgment on April 25, 2013. ECF No. 87. Defendants' motion is now ripe for consideration. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because this motion is dispositive, a Report and Recommendation is entered for the court's review.[2]

I.     Factual and Procedural Background

Plaintiff Mason Johnson was a pre-trial detainee housed at YCDC during the time period relevant to his Complaint. ECF No. 1 at 2. Plaintiff is currently incarcerated at Lieber

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

[2] Other pending motions are addressed within.

Correctional Institution. Plaintiff filed his original Complaint on July 10, 2012, and Amended Complaint on January 24, 2013. ECF Nos. 1, 1-3. Plaintiff asserts that Defendants Officer Bumgardner and Officer Daniels were removing Plaintiff from his cell to take him to recreation on December 31, 2009. ECF No. 1 at 3. Plaintiff contends that, during this process, Defendant Bumgardner asked him to place his hands through his cell door flap so that she could place handcuffs on Plaintiff. *Id.* Plaintiff alleges that once his hands were cuffed that Defendant Bumgardner "slid her baton through the cuffs and door to prevent Plaintiff from moving" and then Bumgardner unlocked Plaintiff's cell door so that the door could be partially opened so that Defendant Daniels could place restraints on Plaintiff's legs. *Id.* Plaintiff contends that it was difficult for him to balance on one foot "with his hands through the flap" and that he lost his balance which resulted in Plaintiff "pull[ing] some away from Officer Bumgardner." *Id.* Plaintiff alleges that Bumgardner "took this as him giving resistance, and started twisting her baton." *Id.* Plaintiff contends that he asked Bumgardner to stop, but "she continued to twist her baton with such force she caused the hand-cuffs to break." *Id.* at 4. Plaintiff contends that this caused him pain and resulted in his wrist being severely injured "in which he had to mend himself due to the fact he was denied any medical care at all his entire stay at [YCDC]." *Id.* Plaintiff seeks compensatory damages, punitive damages, a jury trial, and costs. *Id.* at 5.

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case*, see, e.g.*, *Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.     Analysis

Defendants contend that they are entitled to summary judgment on Plaintiff's claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). ECF No. 62-1 at 10-15. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "'need not meet federal standards', nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739). Further, pretrial detainees, which Plaintiff was at all times relevant to these claims, are required to exhaust administrative remedies. *See* 42 U.S.C.A. 1997e(h) (defining "prisoner" for PLRA purposes as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."); *see also Rutland v. Dewitt*, C/A No. 8:09-13-SB, 2010 WL 288217, *5 & n.1 (D.S.C. Jan. 25, 2010) (applying PLRA to pretrial detainee).

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement. Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the

4

prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005).

In support of their Motion for Summary Judgment, Defendants offer the affidavit of James F. Arwood who is the Chief Administrator of the YCDC. Arwood Aff. ¶ 1, ECF No. 62-3. Chief Arwood attests that Plaintiff filed a grievance on January 1, 2010 concerning the "same general incident about which he now complains" and that Plaintiff's January 1, 2010 grievance focused "exclusively on the later tasing of [Plaintiff] by Sgt. McClure." *Id.* ¶ 6. Arwood avers that Plaintiff's January 1 grievance was answered on January 5, 2010 and that, although filed "within the 72 hour time limit mandated by YCDC policy, it does not mention or complain of any acts by Officers Bumgardner or Daniels." *Id.* Arwood states that Plaintiff did not appeal the response to his January 1, 2010 grievance. *Id.* Arwood attests that Plaintiff filed another grievance on January 26, 2010 in which he alleged that Officer Bumgardner "twisted a night stick in [Plaintiff's] arms to hurt [him] with such force the cuffs broke." *Id.* ¶ 8. Arwood contends that this grievance was filed "well outside the 72 hour limit for filing grievances" and that he responded to this grievance by "advising [Plaintiff] that the Grievance he had previously filed on January 1, 2010 had already been responded to." *Id.* Arwood contends that Plaintiff did not appeal his response to the January 26 grievance. *Id.* Arwood contends that the January 26 grievance was untimely as it was "filed 27 or 28 days after the incident," and not "within 72 hours of the incident." *Id.* Defendants offer a copy of Plaintiffs' grievances in support of their failure to exhaust argument. ECF Nos. 62-6, 62-8. Defendants therefore contend that Plaintiff's

5

claim should be dismissed because has not exhausted his administrative remedies.  ECF No. 62-1 at 15.

In response, Plaintiff contends that he "tried to take the grievance process further by utilizing the appeal process, [h]owever, no officer explained this process to Plaintiff."  ECF No. 87 at 4.  Plaintiff also contends that it was difficult for him to file grievances because he was tased during the December 31, 2009 incident which resulted in "memory lapses which [had] a role in the grievance filing of Plaintiff." *Id.*  Plaintiff also argues that his requests for grievances were denied and that YCDC's policy requires "the assistant administrator or security commander . . . to inform the inmate of the appeal process," and that the appeal process was not explained to Plaintiff.  *Id.*  Finally, Plaintiff argues that YCDC's general counsel threatened him "with reinstating an assault charge which was dismissed if Plaintiff seeked [sic] further action of assault and battery by defendant Bumgardner." *Id.*

The undersigned has reviewed the evidence before the court, including the copies of the grievances Plaintiff filed concerning the allegations in his Complaint, and finds that Plaintiff did not exhaust his administrative remedies.  YCDC's grievance policy requires a grievance to be filed within 72-hours of the incident, *see* Arwood Aff., and although the Plaintiff did file a grievance on January 1, 2010, within the 72 hour time period of the December 31, 2009 incident, the subject of that grievance focused on Plaintiff's complaint about being tased.  *See* ECF No. 62-6.  Nowhere in this grievance does Plaintiff complain about Officers Daniels and Bumgardner or of his handcuffs being broken.  *Id.*   Plaintiff's grievance filed on January 26, 2010 does complain about his handcuffs being broken -- the allegations that are the subject of Plaintiff's Complaint, *see* ECF No. 62-9 - - however this grievance was filed well outside YCDC's 72-hour time limit.   Further, although Plaintiff's arguments in opposition to Defendants' summary

6

judgment motion offer a number of reasons why he did not complete the YCDC grievance process, Plaintiff fails to address his failure to timely file a grievance which addressed the allegations in Plaintiff's Complaint. Because Defendants have shown that Plaintiff failed to exhaust his available administrative remedies before filing this action, the undersigned recommends that Defendants' Motion for Summary Judgment be granted. *See Pozo,* 286 F.3d at 1024 (holding that an inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983.").

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 62, be GRANTED. If the court accepts this recommendation, Plaintiff's pending motions for a jury trial, ECF No. 127, and motion to appoint counsel, ECF No. 134, will be moot.

IT IS SO RECOMMENDED.

January 2, 2014                                             Kaymani D. West
Florence, South Carolina                                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

7