**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | | |
|---|---|---|
| Mason Johnson, | ) | |
| | ) | Civil Action No. 5:12-cv-01914-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| John H. Gregory, III, Kathryn Bumgardner, | ) | |
| Officer Daniels, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On July 10, 2012, *pro se* Plaintiff Mason Johnson ("Plaintiff") filed this 42 U.S.C. § 1983 action (ECF No. 1) alleging that Defendants used excessive force and were deliberately indifferent to Plaintiff's medical needs. *Id.* at 5. Plaintiff has been granted leave to proceed *in forma pauperis* in this matter. (ECF No. 10). This matter is now before the court upon the magistrate judge's Report and Recommendation ("Report"), filed January 2, 2014. (ECF No. 138). The Report recommended that the court grant Defendants Kathryn Bumgardner and Officer Daniels's (collectively referred to as "Defendants") motion for summary judgment (ECF No. 62), which would render Plaintiff's motions for a trial by jury (ECF No. 127) and for the appointment of counsel (ECF No. 134) moot. (ECF No. 138 at 7).

For the reasons stated herein, the court **ACCEPTS** the conclusions of the magistrate judge's Report, although for distinct reasons. The court therefore **GRANTS** Defendants' motion for summary judgment, **DISMISSES** Plaintiff's complaint, and **DISMISSES AS MOOT** Plaintiff's motions for trial by jury (ECF No. 127) and for the appointment of counsel (ECF No. 134).

## FACTUAL AND PROCEDURAL BACKGROUND

The court concludes upon its own careful review of the record that the factual and procedural summation in the magistrate judge's Report is accurate, and the court adopts this summary as its own. Nevertheless, a brief recitation of the facts in the light most favorable to Plaintiff and a brief summation of the procedural background of this case is warranted.

Plaintiff is currently incarcerated at the Lieber Correctional Institution ("LCI"), a facility managed by the South Carolina Department of Corrections ("SCDC"). (ECF No. 1 at 2). However, the incident in question occurred while Plaintiff was detained at the York County Detention Center ("YCDC"). *Id.* Plaintiff filed this action on July 10, 2012, asserting that while Defendants were removing Plaintiff from his cell to attend recreation, Defendant Bumgardner used excessive force. *See id.* at 3–4. Specifically, Plaintiff claimed that Defendant Bumgardner directed Plaintiff to place his hands through a flap in the door of his cell so that she could handcuff him. *Id.* at 3. After handcuffing him, Plaintiff stated that Defendant Bumgardner slid her baton between Plaintiff's handcuffs and his cell door to prevent Plaintiff from moving while Defendant Daniels attempted to place leg restraints on Plaintiff. *Id.* Plaintiff claimed that when Defendant Bumgardner unlocked Plaintiff's cell door so that Defendant Daniels could restrain Plaintiff's legs, Plaintiff lost his balance and leaned backwards. *Id.* Plaintiff asserted that Defendant Bumgardner interpreted Plaintiff's move as resistance and in response, Defendant Bumgardner began to twist her baton despite Plaintiff's request for Defendant Bumgardner to stop. *Id.* at 3–4. Plaintiff stated that Defendant Bumgardner twisted her baton with such force that Plaintiff's handcuffs broke causing Plaintiff pain and resulting in severe injury to Plaintiff's wrist. *Id.* at 4. Plaintiff alleged that he had to mend his injury himself because he was denied medical care throughout his entire detention. *Id.*

On March 18, 2013, Defendants moved for summary judgment.  (ECF No. 62).  Plaintiff filed a response to Defendants' motion for summary judgment on April 25, 2013.  (ECF No. 87). The magistrate judge issued the Report on January 2, 2014, recommending that the court grant Defendants' motion for summary judgment.  (ECF No. 138).  The magistrate judge found that Plaintiff had not properly exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  *Id.* at 6.  Specifically, the Report found that Plaintiff submitted two grievances regarding the incident in question.  *Id.*  However, Plaintiff's first grievance, which was timely filed within seventy-two hours of the incident, focused on a tasing that occurred subsequent to the incident in question by a staff member who is not a defendant in this action.  (*Id.*; *see also* ECF No. 62-6).  The Report found that Plaintiff's second grievance, which pertained to the incident in question, was filed well outside of the seventy-two hour deadline and was therefore, untimely.  (ECF No. 138 at 6; *see also* ECF No. 62-9).

On January 21, 2014, Plaintiff filed Objections to the Report ("Objections").  (ECF No. 140).  In his Objections, Plaintiff contends that his first grievance sought medical treatment for both the tasing incident and his injuries from the broken handcuffs.  (*See* ECF No. 140-1). Plaintiff also notes that the response he received to his second grievance threatened him with disciplinary action if he corresponded further with regard to the incident.  (ECF No. 140 at 2; *see also* ECF No. 62-9).  Plaintiff argues that he was "never given orientation about the grievance process" nor was he advised that his second grievance was untimely filed.  (ECF No. 140-1). Plaintiff contends that the PLRA does not mandate the timely filing of a grievance, but only that a prisoner exhaust the available administrative remedies.  (ECF No. 140 at 2–3).  Plaintiff appears to argue in his Objections that he sought all administrative remedies that were available to him and that he received a final decision for his complaint.  (*See id.* at 2).

**STANDARD OF REVIEW**

The magistrate judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the magistrate judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce,* 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the magistrate judge's Report, this court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis,* 718 F.2d 198, 199 (4th Cir. 1983).

**DISCUSSION**

As Plaintiff is a *pro se* litigant, the court is required to liberally construe his arguments. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978). The court addresses those arguments that, under the mandated liberal construction, it has reasonably found to state a claim. *Barnett v. Hargett,* 174 F.3d 1128, 1133 (10th Cir. 1999).

**Exhaustion of Administrative Remedies**

The PLRA commands a prisoner to exhaust "administrative remedies as are available" prior to seeking § 1983 relief in federal court. 42 U.S.C. § 1997e(a). In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that proper exhaustion is mandatory under the PLRA.

*Id.* at 93.  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  In their motion for summary judgment, Defendants included the section of YCDC's Policy and Procedures Manual pertaining to prisoner grievances.  (ECF No. 62-10).  Defendants also attached provisions in the YCDC Inmate Handbook relating to prisoner grievances.  (ECF No. 62-11).

The YCDC policy manual states that all prisoners should be advised of the grievance procedure, and that at a minimum, the process should be detailed in prisoner publications and during the admission orientation process.  (ECF No. 62-10 at 7).  The policy manual details that the formal prisoner grievance process consists of two stages:  an initial grievance and an appeal. *Id.* at 3–6.  The initial grievance is filed on a 120006.F1 inmate grievance form, and it must be filed within seventy-two hours from the date of the incident forming the basis of the complaint. *Id.* at 3–4.  After an investigation into the prisoner's complaint, the assistant administrator, security commander, or a designee informs the prisoner of his/her decision and has the prisoner sign and date the form to indicate receipt of the decision.  *Id.* at 5.  At that point, "[t]he Assistant Administrator/Security Commander or designee shall inform the inmate of the appeal process to the Chief Administrator or his designee."  *Id.*  The prisoner then has seven days from receipt of the decision to appeal to the chief administrator by writing a letter.  *Id.* at 6.

The YCDC Inmate Handbook similarly outlines the prisoner grievance process.  (*See* ECF No. 62-11 at 4–5).  It specifically states that if the prisoner is not satisfied with YCDC's response to his/her grievance, the prisoner may appeal to the chief administrator within seven days of being informed of that decision.  *Id.* at 4.

The record in the instant action indicates that Plaintiff filed a 120006.F1 grievance form on January 1, 2010, complaining about medical injuries from the tasing that occurred after

Plaintiff's handcuff incident with Defendants.[1]  (ECF No. 62-6).  Lieutenant McMillan responded unfavorably to Plaintiff's grievance on January 5, 2010.  *Id.*  Although Plaintiff checked the space on the form indicating a desire to "appeal to the Adjustment Committee"[2], *id.*, the appeal was never executed.  Well after the passage of seven days, Plaintiff filed a second 120006.F1 grievance form on January 26, 2010, complaining about Defendant Bumgardner's breaking of Plaintiff's handcuffs and another prison official's tasing and strapping of Plaintiff to a chair.[3]  (ECF No. 62-9).  In his second grievance, Plaintiff responded to a prior conversation with Lieutenant McMillan regarding Plaintiff's first grievance.  (*Id.*; ECF No. 62-3 at 4). Plaintiff stated, "S.G.T. [sic] McMillan told me he saw the video tape and her twisting the nightstick in my arms[ b]ut looked at me as if he knew nothing could be done.  If she's on video twisting my arms, why was I tazzed [sic]."  (ECF No. 62-9).  A YCDC official responded unfavorably to Plaintiff's second grievance on January 27, 2010, stating that Lieutenant McMillan already responded to Plaintiff's first grievance concerning "the same issue".  *Id.*  The YCDC's decision further stated, "Any further corresponded [sic] on this issue will be in violation of correspondence privileges, and may result in disciplinary action."  *Id.*

Because the YCDC staff interpreted Plaintiff's first and second grievances to concern the same issue and since a reasonable inference can be drawn that Lieutenant McMillan addressed the handcuff incident with Plaintiff while addressing his first grievance, the court finds Plaintiff's

---

[1] Plaintiff has informed the court that he asked another inmate who passed by Plaintiff's cell for help "because [his] cell at the time was stripped out of all belonging [sic] for (7) days."  (ECF No. 140-1 at 1).  Plaintiff stated that the other inmate informed him that he would write out a grievance for Plaintiff.  *Id.*  Plaintiff asserted that the other inmate also wrote out his second grievance, and that neither of Plaintiff's grievances is written in Plaintiff's handwriting.  *Id.*

[2] The court notes the discrepancy between the YCDC policy manual's explanation that appeals are made to the chief administrator and the prisoner grievance form which suggests appeals are made to an adjustment committee.  The court's analysis, however, is not altered by this discrepancy.

[3] *See supra* note 1.

first 120006.F1 form constitutes a timely grievance of the matter at issue in the instant action. However, the court remains concerned that Plaintiff failed to file a timely appeal within seven days of his first grievance as set out by the YCDC grievance procedure.

In an attempt to justify his failure to file an administrative appeal, Plaintiff contends that administrative remedies beyond his filing of grievances were unavailable to him. Plaintiff first argues that the detention center officials never informed Plaintiff of the appeals process following his unfavorable grievance determination as is required by the YCDC policy manual. (ECF No. 87 at 4; ECF No. 62-10 at 5). Plaintiff also states that he never attended an orientation where the grievance process was explained. (ECF No. 140-1). As noted above, the YCDC policy manual specifies that the assistant administrator, security commander, or a designee should inform a prisoner about the appeals process following the delivery of a grievance decision. (ECF No. 62-10 at 5). The policy manual also states that at a minimum, prisoners should be informed of the grievance process through prisoner publications and admission orientation. *Id.* at 7. While Defendants provided the court with a copy of the inmate handbook provisions concerning the grievance process, the court has no evidence before it from which it can conclude that Plaintiff was provided a copy of the handbook.

The Fourth Circuit has instructed that "in order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011); *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Therefore, Plaintiff carries the burden on the issue of whether YCDC's grievance procedure was available to him. *See Graham v. Gentry,* 413 F. App'x at 663. At least one district court opinion within the Fourth Circuit suggests that a plaintiff arguing unavailability of the prison grievance process

must show that the prison officials took some affirmative action to prevent the plaintiff from filing a grievance. *See Graham v. Cnty. of Gloucester*, 668 F. Supp. 2d 734, 739 (E.D. Va. 2009), *aff'd sub nom. Graham v. Gentry*, 413 F. App'x 660 ("[T]he court cannot conclude based upon the undisputed facts that Plaintiff was affirmatively prevented from utilizing the system or that he was wholly without any responsibility for his failure to grieve."). However, in that case, the district court found it undisputable that the plaintiff was given a verbal overview of the grievance procedure. *Id.* at 739. The court interprets the guidance of the Fourth Circuit to preclude a finding of availability, in a case such as the instant action, where the prison itself has created an affirmative duty to inform the prisoner of the grievance process and where there is a genuine dispute as to whether the prisoner was so informed. *See Graham v. Gentry*, 413 F. App'x at 663 (affirming *Graham v. Cnty of Gloucester* by relying on the undisputed facts that the plaintiff received information on the jail's grievance policy in the inmate handbook and during an orientation session).

In *Burgess v. Igboekwe*, 2012 WL 6054009 (E.D.N.C. Dec. 5, 2012), the district court was faced with a prison policy which affirmatively required prison officials to advise prisoners of the available grievance procedures. *Id.* at *4. Specifically, the prison officials were mandated to provide a written notification of the grievance process as part of orientation, to explain the procedure at orientation, to provide access to copies of the procedure, and to post the procedure "in conspicuous locations throughout the…institution" and in all libraries. *Id.* In finding that the plaintiff failed to demonstrate the unavailability of the grievance procedure, the district court relied upon the absence of any specific allegation by the plaintiff that any of the prison policies designed to inform the prisoner of the grievance procedure were not followed. *Id.*

The evidence before the undersigned consists of unrebutted statements by Plaintiff that the YCDC officials did not inform him of the YCDC grievance process at orientation as mandated by the YCDC policy manual and that the officials did not inform Plaintiff of the appeals process upon their delivery of Plaintiff's unfavorable grievance decision as required. Moreover, Plaintiff indicated on both of his grievances that he wished to appeal, demonstrating that the YCDC prison officials were aware of Plaintiff's intention to appeal.  On these facts, the court finds that Plaintiff has met his burden to create a genuine issue of whether the grievance procedure was unavailable, sufficient to preclude the granting of summary judgment on the grounds of failure to exhaust.

While Plaintiff also argues that the grievance procedure was unavailable to him because the prison officials threatened him with disciplinary action if he further corresponded regarding the incident, the court finds this argument lacks merit.  By the time Plaintiff was threatened by such disciplinary action on January 27, 2010, his time period for filing a timely appeal had long since exhausted.  Nonetheless, for the reasons set forth above, the court finds that Defendants are not entitled to summary judgment on the basis of Plaintiff's failure to exhaust.

**Plaintiff's Excessive Force Claim**

As Plaintiff was a pretrial detainee during the incident in question, his excessive force claim is analyzed under the Due Process Clause of the Fourteenth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).  Due process is violated where "the use of excessive force…amounts to punishment."  *United States v. Cobb*, 905 F.2d 784, 788 (4th Cir. 1990). "Under [this] standard, a plaintiff must show that the defendant inflicted unnecessary and wanton pain and suffering upon the detainee…[and that] the force applied was [not] in a good faith effort to maintain or restore discipline [but instead was applied] maliciously and sadistically for the

purpose of causing harm." *Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013) (internal citation and quotation marks omitted).

The court finds that the facts viewed in the light most favorable to Plaintiff are that Defendants were attempting to properly restrain Plaintiff so that he could attend recreation. Plaintiff acknowledges that in the course of being restrained, he leaned backwards by accident but that Defendant Bumgardner interpreted his actions as resistance.  Moreover, Plaintiff does not rebut Defendants' evidence that when Plaintiff moved backwards Defendant Bumgardner's right hand became trapped between her baton and Plaintiff's cell door causing Defendant Bumgardner pain and injury.  (ECF No. 62-1 at 2; ECF No. 62-4 at 2; ECF No. 62-5 at 2).  Nor does Plaintiff rebut Defendants' evidence that once Defendant Bumgardner's hand was stuck, Plaintiff yelled, "I got you now, sexy, I got you pinned."  (ECF No. 62-1 at 2; ECF No. 62-4 at 2; ECF No. 62-5 at 2).  Plaintiff also has not refuted Defendants' statements that once Plaintiff's handcuffs broke, Plaintiff proceeded to freely roam in the area outside of his cell and directed profane and insubordinate language at Defendant Bumgardner.  (ECF No. 62-1 at 3; ECF No. 62-4 at 2; ECF No. 62-5 at 2).

Therefore, the court finds there is no evidence that Defendants behaved with a malicious intent to cause harm, but instead, the evidence reveals Defendant Bumgardner applied force in a good faith effort to restore order.   As a consequence, Defendants are entitled to summary judgment with respect to this claim.

## Plaintiff's Claim of Deliberate Indifference to Medical Needs

Prison officials violate the due process rights of a pretrial detainee where they are deliberately indifferent to serious medical needs.  *See Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (explaining that the due process rights of a pretrial detainee regarding medical care are

at least as great as Eighth Amendment protections for convicted prisoners).  The court finds that Plaintiff has not furnished sufficient evidence to state a claim of deliberate indifference.

Although Plaintiff alleges in his complaint that he suffered a severe wrist injury, he does not further describe his injury nor indicate that he expressed his medical concerns to either of Defendants.  Instead, Defendants have submitted unrebutted evidence that following the breaking of Plaintiff's handcuffs, Plaintiff paraded freely and aggressively around the area outside of his cell at the encouragement of the other inmates located inside the maximum detention unit.  (ECF No. 62-1 at 3; 62-5 at 3).  In his response to Defendants' motion for summary judgment, Plaintiff provides some detail about his injuries from being tased.  (*See* ECF No. 87 at 4).  However, the court finds such information irrelevant to the instant action as Plaintiff did not allege injury from the tasing in his complaint.  Moreover, Plaintiff does not contend that he requested medical assistance for his tasing injury from either of Defendants.

Thus, the court grants Defendants' motion for summary judgment for Plaintiff's deliberate indifference claim as well.

## CONCLUSION

Based on the aforementioned reasons and after a thorough review of the Report and the record in this case, the court **ACCEPTS** the ultimate conclusions of the magistrate judge's Report (ECF No. 138).  The court **GRANTS** Defendants' motion for summary judgment (ECF No. 62), thereby **DISMISSING** with prejudice Plaintiff's claims against Defendants.  Accordingly, the court **DISMISSES AS MOOT** Plaintiff's motions for trial by jury (ECF No. 127) and for the appointment of counsel (ECF No. 134).

**IT IS SO ORDERED.**

11

*J. Michelle Childs*

United States District Judge

February 21, 2014
Greenville, South Carolina